**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**LARRY MANLEY,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　**Civil Action No. 3:14-cv-203-JAG**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,
LIVE WELL FINANCIAL, INC., and
ATLANTIC LAW GROUP, LLC,**

    **Defendants.**

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

    1.    This is an action filed by a homeowner seeking relief from an improper foreclosure. Plaintiff Larry Manley continues to reside in his home and is able to meet all the conditions of his home loan in order to remain in his home. He seeks to have Defendants' improper foreclosure declared void and to recover statutory, actual, and punitive damages, plus his attorney's fees and costs. The core wrongdoing uniting all the claims is the misrepresentation of the actual creditor who owns Plaintiff's home loan.

    2.    Plaintiff alleges that Defendant Atlantic Law Group, LLC violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), by making an inaccurate disclosure of the Act's cornerstone validation of debts notice[1] by failing to send Plaintiff a required 15 U.S.C. § 1692g debt validation notice that contained the name of the creditor to whom the subject debt was owed, and by making the false and misleading representation that

---

[1] The rights and obligations established by 15 U.S.C. § 1692g validation of debts disclosure requirements were considered by the Senate to be a significant feature of the Act. As the Fourth Circuit has stated, "Congress included the debt validation provisions in order to guarantee that consumers would receive adequate notice of their legal rights. *See* S. Rep. No. 382, 95th Cong., 1st Sess. 4, 8, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702." *Miller v. Payco General American Credits, Inc.,* 943 F.2d 482, 484 (4th Cir. 1991).

Defendant Live Well Financial, Inc. was the creditor to whom the debt was owed, in violation of the Act's prohibitions against the use of false, deceptive, or misleading representations or means in connection with the collection of a debt. Plaintiff also asserts a conspiracy claim against all three Defendants based on the same unlawful conduct.

3. Finally, Plaintiff seeks to quiet title, thereby restoring the title to his home to its status prior to the events complained of herein.

**Parties**

4. Plaintiff Larry Manley ("Manley") is a natural person who resides in his home of almost sixty years at 1114 Kruper Avenue, Hopewell, Virginia 23860.

5. Defendant Federal National Mortgage Association ("Fannie Mae") is a corporate entity that since September 6, 2008, has been under the conservatorship of the Federal Housing Finance Authority, an agency of the United States, which conservator has authorized Fannie Mae to sue and be sued in its own name. Fannie Mae was the assignee of Mr. Manley's home loan. At all times pertinent to this lawsuit, Fannie Mae owned Plaintiff's loan.

6. Defendant Live Well Financial, Inc. ("Live Well") is a Delaware corporation that has its principal place of business in the Commonwealth of Virginia.

7. Defendant Atlantic Law Group, LLC ("ALG") is a debt collection law firm headquartered in Leesburg, Virginia. As an entity that "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and that uses one or more instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the enforcement of security interests, ALG is a debt collector pursuant to 15 U.S.C. § 1692a(6), and is subject to the Federal Fair Debt Collection Practices Act, ("FDCPA," 15 U.S.C. § 1692 *et seq.*).

8. ALG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due for other parties and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6).

## Statement of Facts

### *Atlantic Law Group, LLC is a Debt Collector*

9. Defendant Atlantic Law Group, LLC is a law firm whose practice is focused on the collection of debts.

10. ALG advertises that it focuses in real estate law and creditor's rights, more specifically that:

> Atlantic Law Group, LLC is a law firm that serves the real estate financial industry in the mid-Atlantic area. Atlantic has extensive experience representing investors, lenders, banks and servicers in loan transactions, default, bankruptcy proceedings, land contract disputes and default, title issues, and real estate transactions. We understand our clients' business, industry, challenges and opportunities. We take great pride in providing outstanding legal counsel and excellent representation in all aspects of real property transactions and related finance law.[2]

11. ALG regularly collects home loan debts.

12. ALG regularly demands payment from consumers of claimed arrearages and provides to consumers both reinstatement quotes and itemizations of amounts that ALG is attempting to collect.

13. ALG regularly tells consumers in correspondence that "this is an attempt to collect a debt and any information obtained will be used for that purpose" and/or that the communication is from a debt collector, the disclosures that the FDCPA, at 15 U.S.C. § 1692e(11), requires that debt collectors provide in all written communications (other than a

---

[2] *See* http://www.atlanticlawgrp.com/, review and updated May 14, 2014.

formal pleading) sent "in connection with the collection of any debt" ("the § 1692e(11) disclosure").

14. ALG regularly attempts to provide the verification of debts required by the FDCPA, at 15 U.S.C. § 1692g, upon written request from consumers.

*Defendant ALG Makes a False Disclosure of the Consumer's § 1692g Thirty Day Validation Notice Rights and in so Doing Also Uses False, Deceptive or Misleading Representations in Connection With the Collection of a Consumer Debt*

15. Plaintiff obtained a reverse mortgage, also called a Home Equity Conversion Loan Agreement (HECM), dated April 24, 2009, from Live Well that, among other contract documents, included an adjustable rate note ("Note"). The Note was payable to Live Well.

16. The Note was not a negotiable instrument because it is not payable for a sum certain, not due on a date certain, and requires reference to at least two other contract documents to determine its terms and the amount that may be due at any time.

17. The Note was secured by a Deed of Trust dated April 24, 2009, on Mr. Manley's residence on Kruper Avenue.

18. Under the Deed of Trust, Mr. Manley and Live Well appointed TitleWorks of VA as trustee.

19. As part of this HECM transaction, Mr. Manley was not obligated to make any monthly payments on the loan.

20. HECM transactions are insured by the American taxpayer and were specifically created as a way for older Americans to access the value of their homes to pay debts or relieve them of the burden of their existing monthly payment on a home debt.

21. HECMs are marketed to older Americans as a way to guarantee that they can continue to reside in their home while relieving them of the monthly obligation to pay a house payment.

22. Because the borrower does not pay a monthly payment, the amount owed on the loan increases each month by the interest and account maintenance fees.

23. In a HECM, a formula is used to determine how many dollars the borrower can access, and the formula is based on the borrower's life expectancy, the value of the home, and the interest rate on the loan.

24. The formula used to initiate the transaction is designed so that when the borrower dies or otherwise leaves the home, the value of the home should be sufficient to pay the amount due.

25. The loan is secured by two Deeds of Trust, one to the creditor and one to the Department of Housing and Urban Development (HUD).

26. The HECM transaction includes a three-way agreement between the borrower, the initial creditor, and HUD.

27. HUD is involved because the HECM is insured through an insurance program run by the Federal Housing Administration (FHA).

28. Under the FHA HECM insurance administered by HUD, when a borrower no longer continues to live in the home, if the sale of the home is insufficient to pay the balance due on the loan, the difference is covered by this federal insurance.

29. Once initiated, HECMs are usually sold to an assignee.

30. At the time period pertinent to this lawsuit, Fannie Mae was the primary purchaser of HECMs throughout the United States.

31. After entering in the transaction with Mr. Manley, pursuant to its normal business practice Live Well then assigned away its rights in the Note and the Deed of Trust and, although intervening assignees not pertinent to this lawsuit may have existed, Fannie Mae ultimately accepted assignment of the Note and Deed of Trust.

32. The debt, a home loan, was incurred primarily for personal, family or household purposes, and thus falls within the purview of the FDCPA. 15 U.S.C. § 1692a(5).

33. ALG sent Plaintiff an April 24, 2013, ALG dunning letter[3], a copy of which is attached hereto as Exhibit A.

34. ALG's letter, Exhibit A, and its other communications with Plaintiff were made to attempt to collect a debt that is regulated by the FDCPA.

35. Exhibit A was ALG's initial written notice communication with Plaintiff. Exhibit A purported to make the required § 1692g debt validation disclosures to the Plaintiff.

36. On its second page, ALG's letter states that the "name of the creditor to whom the debt is owed is Live Well Financial, Inc."

37. On the first page of Exhibit A, ALG also identifies Live Well as the creditor.

38. In Exhibit A, ALG falsely identifies the creditor to whom the debt is owed.

39. The actual creditor was Fannie Mae, as assignee of the Note and the Deed of Trust.

40. By assigning its rights in the Note and the Deed of Trust, Live Well gave away the right to hold itself out as the owner of the Note, or the creditor, or the party secured by the Deed of Trust, and it assigned away any right that it previously held as the lender to appoint a substitute trustee under the Deed of Trust.

---

[3] A "dunning letter" is a letter demanding payment of a debt--*i.e.*, a collection notice. *Fariasantos v. Rosenberg & Associates, LLC*, 2014 WL 928206, *1, 2014 U.S. Dist. Lexis 30898, *3, (E.D. Va. 2014); *Bicking v. Law Offices of Rubenstein and Cogan*, 783 F. Supp. 2d 841, 842, n.1 (E.D. Va. 2011).

41. ALG prepared a Substitution of Trustee document for Live Well's signature that purported to name ALG Trustee LLC as the trustee for the Deed of Trust that secures the Note. (Exhibit B).

42. Through its attorney in fact, Live Well signed the Substitution of Trustee on May 9, 2013.

43. At the time that Live Well signed the Substitution of Trustee, Fannie Mae knew it was the party secured by the Deed of Trust.

44. At the time that Live Well signed the Substitution of Trustee, Fannie Mae knew that under Virginia law it was the party with the power to appoint a new trustee for the Deed of Trust.

45. ALG then recorded this document in the land records of the Circuit Court Clerk's Office for the City of Hopewell.

46. ALG knew that Exhibit B would be sent to Mr. Manley and knew that Exhibit B was part of its attempt to collect a debt from Mr. Manley.

47. Exhibit B states that Live Well is the noteholder.

48. Exhibit B falsely identifies the noteholder.

49. At that time, the actual noteholder was Fannie Mae, as the assignee of the Note and beneficiary of the deed of trust securing that Note.

50. Exhibit B contains the false and misleading representation that Defendant Live Well is the creditor to whom the debt is owed.

51. ALG knew or should have known that this and each of the foregoing misrepresentations it made were false. *Bourff v. Rubin Lublin, LLC*, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15, 2012) (stating "[t]he

identity of the "creditor" is a serious matter"); *Shoup v. McCurdy & Candler*, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

52. ALG knew that Fannie Mae was the creditor to whom the debt was owed.

53. ALG specializes in collection and foreclosure work.

54. ALG is the successor in interest to Draper & Goldberg, PLLC, which began operating as Atlantic Law Group, LLC effective July 17, 2009. See, e.g., *Kahn v. Seidel*, 1:09-cv-833-JCC-TRJ, Document 45-1, PageID# 613, attached hereto as Exhibit C.

55. In *Wilson v. Draper & Goldberg, P.L.L.C.,* 443 F.3d 373, 376, 378 - 79 (4th Cir. 2006), the Fourth Circuit held that Draper & Goldberg's foreclosure action was an attempt to collect a "debt" as defined by the Act and that Draper & Goldberg fell within the definition of "debt collector" under the Act.

56. It is unlikely that a law firm that specializes in collection and foreclosure work made the election inadvertently to send Plaintiff a § 1692g debt validation notice that did not contain the accurate name of the creditor to whom the debt is owed.

57. ALG advises and controls the manner in which ALG Trustee LLC conducts foreclosure sales in the Commonwealth of Virginia.

58. Pursuant to ALG's direction, on July 26, 2013, ALG Trustee LLC purported to exercise the power granted to it by Exhibit B to sell Plaintiff's home by auction to Live Well and then to Fannie Mae. (Exhibit D, Trustee's Deed).

59. ALG oversees a high volume business of foreclosures in Virginia and a significant number of those foreclosures involve Fannie Mae such that ALG knew that Fannie Mae's ultimate status as purchaser meant that Fannie Mae, as the owner of the Note, was the party secured by the Deed of Trust.

60. At the time of the foreclosure, Fannie Mae knew that it had not appointed ALG as substitute trustee.

61. At the time of the foreclosure, Fannie Mae knew that Live Well had misrepresented that it was the noteholder with the power to modify the Deed of Trust and appoint a new trustee.

62. At the time of the foreclosure, Fannie Mae knew that ALG was not a substitute trustee with any power to transfer any title interest in Mr. Manley's home to Fannie Mae.

63. Knowing that ALG was not actually a trustee under the Deed of Trust with power to transfer a deed to Fannie Mae, ALG, Fannie Mae, and Live Well worked together to have ALG purport to sell the house to Fannie Mae at auction.

64. The bid price at auction was $29,000.00.

65. Mr. Manley's home is assessed at $63,500.00.

66. Because Plaintiff's HECM was insured through the FHA program at HUD, that federal loan program and by extension the American taxpayer will be asked to cover the difference between the sale price of the home and the amount due on the debt.

67. Fannie Mae has sought to evict Mr. Manley from his home by filing an Unlawful Detainer Action in the General District Court of the City of Hopewell, Case No. GV13002182-00.

68. The eviction action is now pending in the Circuit Court of the City of Hopewell.

69. Fannie Mae claims in that action that Exhibit D makes it the owner of the home.

70. Exhibit D does not make Fannie Mae the owner of the home because ALG Trustee LLC was not properly appointed substitute trustee of the Deed of Trust on Mr. Manley's home that secures the Note.

71. ALG Trustee LLC was not properly appointed substitute trustee because under the terms of the Deed of Trust and Virginia law, only Fannie Mae, as the owner of the Note and beneficiary of the deed of trust securing it, had the power to appoint a substitute trustee.

72. ALG Trustee LLC was not properly appointed substitute trustee because Exhibit B is not signed by or in the name of the entity with the authority to appoint a substitute trustee.

73. ALG Trustee LLC was not properly appointed substitute trustee because Exhibit B falsely claims that Live Well is the noteholder.

74. Pursuant to the Deed of Trust signed by Mr. Manley and Live Well, TitleWorks of VA remains to this day the only trustee with authority to conduct any foreclosure on Mr. Manley's residence.

75. For reasons known only to them, Live Well, Fannie Mae, and ALG worked together to conceal the identity of the owner of the loan.

76. Fannie Mae did not want to sign a document in its name that appointed any new trustee.

77. As the only trustee with authority to conduct any foreclosure on Mr. Manley's residence, TitleWorks of VA would not conduct a foreclosure on Mr. Manley's residence under the current circumstances.

78. The current circumstances are that Mr. Manley has the ability to meet all his HECM obligations.

79. The HECM obligations include Mr. Manley maintaining insurance on his home and paying the taxes.

80. Since the foreclosure, Mr. Manley has been unable to have his home insured because the title records do not show that he is the deed owner.

81. Since the foreclosure, Mr. Manley has been unable to obtain the property tax relief available to him as a senior citizen from the City of Hopewell.

82. Unless and until the deed is put back in his name, Mr. Manley is unable to insure the home and to obtain the property tax relief that is available to other senior citizens in the City of Hopewell.

83. At this time, the conduct of the Defendants is keeping Mr. Manley from complying with his obligations under the HECM home loan.

84. As the trustee of the Deed of Trust and pursuant to its duty of fairness to all parties, TitleWorks of VA would not conduct a foreclosure on Mr. Manley's home without first ensuring that Mr. Manley had an opportunity to comply with his HECM obligations.

85. At all times pertinent to the actions in issue, Live Well was not a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. As the creditor and owner of the Note, Fannie Mae was the beneficiary of the Deed of the Trust, despite the Defendant's subsequent correspondence indicating otherwise.

86. As a result of the acts and omissions of the Defendants, Mr. Manley has suffered and continues to suffer actual damages and injury, including but not limited to, emotional distress, mental anguish and suffering, loss of peace of mind, and a loss of statutorily protected rights, along with the loss of his home and his equity therein.

## FIRST CAUSE OF ACTION
## CONSPIRACY
**Defendants Fannie Mae, Live Well and Atlantic Law Group**

87. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

88. Defendants Fannie Mae, Live Well, and Atlantic Law Group worked together to pursue a foreclosure in an improper manner by concealing and misrepresenting the true owner of the Note.

89. Neither Live Well nor ALG had any authority to pursue a foreclosure in the proper manner.

90. As major actors in the home finance industry, Fannie Mae and Live Well should know how to conduct a foreclosure properly in Virginia.

91. As a law firm that participates in the foreclosure process in Virginia, ALG should know how to conduct a foreclosure properly in Virginia.

92. Misrepresenting the owner of a home loan and filing documents in Virginia land records with false material facts statements is never a proper way to conduct a foreclosure in Virginia and is unlawful.

93. To accomplish their objective, these defendants knew what documents would need to be prepared at each step of the foreclosure process, and took steps to ensure that none of the documents identified the true owner of the Note.

94. The defendants knowingly worked together to prepare these documents with false statement of material facts and such conduct is unlawful.

95. As a result of Defendants' concerted and improper conduct, Mr. Manley is facing the loss of his home and has suffered and continues to suffer stress, inconvenience, and lost time.

96. Defendants acted with conscious disregard for Mr. Manley's rights sufficient to justify an award of punitive damages against them.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692e(2)(A)**
**Defendant Atlantic Law Group, LLC**

97. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

98. Defendant ALG violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) by making a false representation of the character, amount, or legal status of the debt when it misrepresented that Defendant "Live Well Financial, Inc" was the creditor to whom the debt was owed.

99. Plaintiff is therefore entitled to actual and statutory damages against Defendant ALG, as well as his reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692e(10)**
**Defendant Atlantic Law Group, LLC**

100. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

101. Defendant ALG violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect the debt, when it misrepresented that Defendant "Live Well Financial, Inc." was the creditor to whom the debt was owed.

102. Plaintiff is therefore entitled to actual and statutory damages against Defendant ALG, as well as his reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692g(a)(2)**
**Defendant Atlantic Law Group, LLC**

103. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

104. Defendant ALG violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(2) by sending Plaintiff a thirty day debt validation notice that did not contain the name of the creditor to whom the debt was owed.

105. Plaintiff is therefore entitled to actual and statutory damages against Defendant ALG, as well as his reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**Defendant Fannie Mae**

106. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

107. Fannie Mae breached the Deed of Trust contract with Mr. Manley by working with Live Well and ALG to make it appear like ALG as trustee of the Deed of Trust signed a proper deed to Fannie Mae.

108. Fannie Mae breached the Deed of Trust contract with Mr. Manley by not pursuing any foreclosure remedy it thought it might have with the actual trustee under the Deed of Trust, TitleWorks of VA.

109. The best remedy for this breach is for the appointment of substitute trustee (Exhibit B) and the foreclosure deed (Exhibit D) to be declared void.

110. In the alternative of voiding these documents, Mr. Manley is entitled to recover his damages caused by the loss of his title.

## SIXTH CAUSE OF ACTION
## QUIET TITLE
## Defendant Fannie Mae

111. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

112. The alleged appointment of substitute trustee (Exhibit B) was not proper because it is not signed and acknowledged by or in the name of the owner of the Note or beneficiary of the Deed of Trust with authority to make such appointment.

113. Because the substitution of trustee document was not proper, no rights or powers were passed to the substitute trustee to sign a foreclosure deed (Exhibit D).

114. Because the substitute trustee had no right or power to sign the foreclosure deed that purports to transfer title to Fannie Mae, Fannie Mae received no rights by that deed.

115. Because TitleWorks of VA is still the trustee of the Deed of Trust on Mr. Manley's home that secures the Note, Mr. Manley remains the deed holder subject to the terms of that Deed of Trust.

116. Defendant Fannie Mae never received title to Mr. Manley's home.

117. Mr. Manley has superior title to the home to Fannie Mae's claim of superior title.

118. Fannie Mae's interest in the home is limited to its status as the beneficiary of the Deed of Trust that continues to secure Mr. Manley's home loan.

119. In the alternative to his breach of contract claim, Mr. Manley has no plain, adequate, or speedy remedy at law. Unless this court quiets the title, Mr. Manley will suffer irreparable harm.

120. Under this Quiet Title claim, Mr. Manley is entitled to have both the substitution of deed document and the trustee's deed marked void, thus restoring the title to his home to its status prior to these events.

121. This Quiet Title claim which is based on the absence of any title ever held in trust by the alleged foreclosure trustee is distinct from the Quiet Title claim in <u>Squire v. VHDA</u> such that Mr. Manley does not have to allege that is in compliance with his HECM obligation of keeping his home insured and the taxes current.

122. As a condition of title being put back in his name, Mr. Manley agrees that he must continue to keep his home insured and the taxes current.

### **SEVENTH CAUSE OF ACTION** ###
### **EQUITABLE RESCISSION OF FORECLOSURE** ###
### **Defendant Fannie Mae** ###

123. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

124. In the alternative to his Breach of Contract claim and his Quiet Title claim, Mr. Manley has no plain, adequate, or speedy remedy at law. Unless this Court, under Virginia's equity laws will provide him relief, Mr. Manley will suffer irreparable harm.

125. Under this Equity claim, Mr. Manley is entitled to have both the substitution of deed document (Exhibit B) and the trustee's deed (Exhibit D) marked void, thus restoring the title to his home to its status prior to these events.

126. As a condition of title being put back in his name, Mr. Manley agrees that he must continue to keep his home insured and the taxes current.

**WHEREFORE**, the Plaintiff, by counsel, respectfully prays that this honorable court award him the following relief:

1. Actual damages pursuant to the conspiracy, the FDCPA, and breach of contract claims;

2. Statutory damages up to $1000 pursuant to FDCPA, 15 U.S.C. § 1692k(2)(A);

3. Order that both the substitution of deed document (Exhibit B) and the trustee's deed (Exhibit D) are to be marked void;

4. Punitive damages;

5. Costs and reasonable attorneys' fees pursuant FDCPA, 15 U.S.C. § 1692k; and

6. Such other or further relief as the Court deems proper.

TRIAL BY JURY IS DEMANDED

          Respectfully submitted,
          LARRY MANLEY
          By Counsel

___/s/_____

Dale W. Pittman (VSB #15673)
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, VA 23803-3212
(804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Thomas D. Domonoske (VSB # 35434)
461 Lee Avenue
Harrisonburg, VA 22802
(540) 442-7706
Email: tomdomonoske@earthlink.net

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of June, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

        Jason W. McElroy
        Tessa K. Somers
        WEINER BRODSKY KIDER PC
        1300 19th Street, NW, 5th floor
        Washington, DC 20036-1609
        *Counsel for Defendants Federal National*
        *Mortgage Association and Live Well Financial, Inc.*

        Dean L. Robinson
        ATLANTIC LAW GROUP, LLC
        1602 Village Market Blvd., SE, Suite 310
        Leesburg, VA 20175
        *Counsel for Atlantic Law Group, LLC*

                                  __/s/_____
                                  Dale W. Pittman (VSB #15673)
                                  The Law Office of Dale W. Pittman, P.C.
                                  112-A W. Tabb Street
                                  Petersburg, VA 23803-3212
                                  (804) 861-6000
                                  Fax: (804) 861-3368
                                  Email: dale@pittmanlawoffice.com
                                  Counsel for Plaintiff