**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**LARRY MANLEY,**

       **Plaintiff,**

v.                                              Civil Action No.  3:14-cv-203-JAG

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**
**LIVE WELL FINANCIAL, INC., and**
**ATLANTIC LAW GROUP, LLC,**

       **Defendants.**

**<u>PLAINTIFF'S OPPOSITION MEMORANDUM TO</u>**
**<u>DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT</u>**

**Introduction**

This case was originally filed in state court and removed by Defendants to this Court. Defendants then filed Motions to Dismiss and identified that the state court pleading did not comport with the requirements of the Federal Rules of Civil Procedure.  Mr. Manley filed a First Amended Complaint to address some of Defendants' concerns.  Defendants Live Well and Fannie Mae filed a Motion to Dismiss only the state law claims, and ALG joined in that Motion to Dismiss.  Because of a recent Virginia Supreme Court opinion on foreclosures in Virginia, Plaintiff sought and was given permission to file a Second Amended Complaint (SAC). Defendants Live Well and Fannie Mae have again filed a Motion to Dismiss only the state law claims of the SAC, and ALG again joined in the Motion to Dismiss.  As yet, no responsive pleading has been filed to the Fair Debt Collection Practices Act (FDCPA) claims, which are the basis of this Court's jurisdiction.

The claims in issue on these Motions to Dismiss are the Conspiracy claim that includes all Defendants, and the Quiet Title, the Breach of Contract, and the Equitable Rescission claims against Fannie Mae. For the reasons set for below, the Motions to Dismiss should be denied.

**I.**

**THE FACTS TO BE CONSIDERED BY THIS COURT ON A MOTION TO DISMISS DO NOT INCLUDE DENIALS CONTRARY TO THE ALLEGATIONS.**

**A. The factual allegations in the Complaint must be accepted as true.**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), and uses the assumption that the facts alleged are true, *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Thus, in a motion to dismiss based on failure to state a claim, the defendant must accept the facts alleged in the Complaint as true. *See Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974); *Puerto Rico ex. Rel. Ouiros v. Alfred L. Snapp & Sons*, 632 F.2d 365, 367 (4th Cir. 1980). Furthermore, all reasonable inferences must be made in Plaintiff's favor. *See MacKethan v. Peat, Marwick, Mitchell & Co.*, 439 F. Supp. 1090, 1094 (E.D. Va. 1977).

As stated by the United States Supreme Court "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this plausibility standard, Plaintiff must demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Id.* Instead, Plaintiff must articulate facts that, when accepted as true, state a claim upon which relief can be granted and Plaintiff cannot rely upon "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Determining whether

a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d at 193(citing *Iqbal* 129 S. Ct. at 1950). "[A] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss" but simply requires allegations sufficient "enough to raise a right to relief above the speculative level." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)(*citing Twombly*, 550 U.S. at 555). Because the Defendants assert a failure to state a claim, this standard must be applied.

>   **B. As alleged in the SAC, Live Well transferred away all its rights in the HECM, and Mr. Manley can comply with all his duties under the HECM, and the real trustee under the Deed of Trust would not have conducted a foreclosure.**

This case involves a Home Equity Conversion Loan Agreement (HECM) that Live Well arranged for Mr. Manley in April 2009. As alleged in Paragraph 31 of the SAC, Live Well assigned away all its interests in that transaction. Specifically, Paragraph 40 asserts the following:

>   By assigning its rights in the Note and the Deed of Trust, Live Well gave away the right to hold itself out as the owner of the Note, or the creditor, or the party secured by the Deed of Trust, and it assigned away any right that it previously held as the lender to appoint a substitute trustee under the Deed of Trust.

At all pertinent times to this lawsuit, Fannie Mae was the creditor because it was the assignee of the Note and the Deed of Trust. (Para. 31, 39, and 49). The SAC details how the Defendants worked together to falsely represent that Live Well was still the noteholder. (Para. 33 through 52). Specifically, they used this misrepresentation to have Live Well purportedly modify the Deed of Trust by appointing a new trustee. Fannie Mae now seeks to profit from this conduct by evicting Mr. Manley from his home under the claim that this alleged new trustee transferred a valid title to it. (Para. 67 through 69).

The SAC also alleges that if the improper foreclosure is set aside, Mr. Manley can comply with his normal duties under the HECM. (Para. 78-83). As a reverse mortgage, he owes no monthly payment but must pay his taxes and keep the home insured. The SAC explains how Defendants' conduct has made it impossible for him to insure his home and kept him from accessing the real property tax rebate that his locality provides senior citizens.

Finally, the SAC alleges that the current actual trustee under the Deed of Trust would not have conducted a foreclosure without first ensuring Mr. Manley was given an opportunity to comply with those duties. (Para. 84).

**C. Defendants refuse to accept the core factual allegation that Live Well assigned away all its rights to the loan and Deed of Trust, that only Fannie Mae had the power to appoint a substitute trustee, and that Mr. Manley has been harmed.**

On page 2 of the Statement of Facts in Memorandum of Law filed by Live Well and Fannie Mae and to which ALG has joined, Defendants inaccurately summarize the facts of the SAC. The Plaintiff's core allegation is that Live Well assigned away all its rights and that Fannie Mae, as the creditor, was the owner of the loan and the beneficiary under the Deed of Trust. Instead of accepting these facts, Defendants' summary says that Live Well made the loan, and then later substituted a new trustee under the Deed of Trust, and that Fannie Mae was merely "an investor." The Defendants' factual assertion that Fannie Mae was just an investor is directly contrary the specific factual allegations of the SAC that it, rather than Live Well, was the owner with the powers, rights, and duties under the Deed of Trust. Assuming the facts in the SAC to be true, Defendants must base any Motions to Dismiss on the fact that Fannie Mae was the owner of the loan and the beneficiary of the Deed of Trust, and that Live Well had no more rights under it.

Rather than accept the allegation that Live Well assigned away all its rights and interests in the transaction, on page 4 of their Memorandum Defendants refer to "Live Well's exercise of

its rights under the Deed of Trust." Given the specific allegation of Paragraph 40 of the SAC, Defendants may not claim on a Motion to Dismiss that Live Well had any rights to exercise. No defendant may terminate a lawsuit on a Motion to Dismiss by making arguments from facts directly contrary to the facts as alleged.

In addition, Defendants ignore the allegations that Mr. Manley can comply with his HECM agreement, and that the original trustee would allow him the opportunity to do so. Instead of accepting these allegations as true, Defendants claim on page 6 of their Memorandum that if the foreclosure is set aside that Mr. Manley will be in default and immediately foreclosed on again.

Because Defendants have not based their Motions to Dismiss on the facts as alleged, their legal conclusions necessarily fail.

## II.

## MR. MANLEY HAS STANDING TO CHALLENGE THE REPEATED MISREPRESENTATIONS THAT LIVE WELL WAS THE OWNER OF THE NOTE.

The Defendants' Motions to Dismiss attack state law claims for Conspiracy, Breach of Contract, Quiet Title, and Equitable Rescission. These are the First, Fifth, Sixth, and Seventh Causes of Action and are addressed in that order below. The last section rebuts Defendants' claim that Mr. Manley is not entitled to challenge Defendants' unlawful conduct.

### A. Mr. Manley's Conspiracy claim properly alleges that Defendants worked together to conduct an improper foreclosure by concealing and misrepresenting the owner of the note.

Defendants' attack on the Conspiracy claim is without merit. Defendants' Motion to Dismiss asserts that the SAC does not allege any unlawful conduct nor any concerted action. Actually, the SAC alleges the unlawful conduct of making false assertions of material facts, of

violating Virginia's statutory scheme for recording property documents by filing a materially false document in its land records, and of violating the FDCPA.

Virginia law has long recognized the tort of civil conspiracy. *See Werth v. Fire Cos' Adjustment Bureau*, 160 Va. 845, 854-55 (1933)(relying in part on "Lord Brampton in the case of *Quinn* v. *Leathem* [1901] A.C. 495, 70 L.J.P.C. 76, 65 J.P. 708, 50 W.R. 139, 85 L.T.N.S. 289, 17 Times L. Rep. 749, 1 British Rul. Cas. 197"). "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means. In other words, the basis of the action is the wrong which is done under the conspiracy and which results in damage to the plaintiff." *Gallop v. Sharp*, 179 Va. 335, 338 (1942)(relying upon 11 Am. Jur., Conspiracy, section 45 and 15 C.J.S., Conspiracy, sections 6 and 21). "A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Harrison v. United Transportation Union*, 530 F.2d 558, 561 (4th Cir. 1975), cert. denied, 425 U.S. 958 (1976).

Defendants mistakenly attack the conspiracy claim by claiming it "cites no authority for the proposition that misidentifying the owner of a Note on an appointment of substitute trustee is unlawful." Actually, Paragraph 31 of the SAC provided citations for why the identity of the creditor is a serious matter. Furthermore, the SAC detailed how such misrepresentations violated the FDCPA. Paragraph 71 further explained that "under the terms of the Deed of Trust and Virginia law, only Fannie Mae, as the owner of the Note and beneficiary of the deed of trust securing it, had the power to appoint a substitute trustee." Paragraph 92 stated that "[m]isrepresenting the owner of a home loan and filing documents in Virginia land records with false material facts statements is never a proper way to conduct a foreclosure in Virginia and is

unlawful." Finally, the Federal Rules of Civil Procedure do not require a legal citation for the proposition that a material misrepresentation in a document recorded in the land records is unlawful. Such citations may appear in a brief supporting a complaint but are not required to be pleaded.

Defendants take the indefensible position that neither the sending of false statements of material fact in the mail nor the filing of false statements in Virginia land records are unlawful acts. Such conduct is both a federal and a state crime, and could be the subject of a RICO action. Furthermore, under Virginia law, Va. Code § 55-59(9), the appointment of substitute trustee is to be signed and acknowledged by the party secured by the deed of trust. Pretending to be the statutorily mandated entity when you are not results in the filing of false documents among the public land records. Under Va. Code § 18.2-168, "[i]f any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of a Class 4 felony." As explained in *Campbell v. Com.*, 431 S.E.2d 648, 651, 246 Va. 174,179 (1993), forgery in Virginia uses the English common law definition of "falsely and fraudulently making or altering any matter of record" and does not require proof of harm. In addition to violating Va. Code § 18.2-168, the false statement in the land records also violates Va. Code § 18.2-216's criminal prohibition against untrue, deceptive or misleading writings or documents used "to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto" that someone "places before the public." Finally, the common law of fraud has for hundreds of years made material misrepresentations of fact unlawful.

The SAC adequately alleges concerted action by the Defendants. It alleges how the conduct by each of the Defendants has created the harm to Mr. Manley. It alleges that the Defendants "worked together to conceal the identity of the owner of the loan." (Para. 75) and "worked together to have ALG purport to sell the house to Fannie Mae." (Parap. 63). It alleges they "knew what documents would need to be prepared at each step of the foreclosure process, and took steps to ensure that none of the documents identified the true owner of the Note." (Para. 93). It attaches two documents where the same misrepresentation was made (Exhibit A and B) and explains the role of ALG and Live Well in creating those documents. Finally, it explains how Fannie Mae seeks to profit from the joint action by evicting Mr. Manley in reliance the misrepresentation. (Para. 67 through 69).

Defendants' assertion that Live Well was the servicer of a loan owned by Fannie Mae and had authority to act as Fannie Mae's agent to make an appointment for Fannie Mae is irrelevant to this lawsuit. First, the allegation that Live Well is an agent for Fannie Mae is nowhere made in the SAC, and not a fact before the Court. Second, the documents attached as Exhibit A and B do not represent that Live Well is acting as Fannie Mae's agent. If the appointment of substitute trustee document had asserted that Live Well was acting as agent for Fannie Mae, and if that fact were true, then no misrepresentations would have been made. That hypothetical world is irrelevant because the documents make no such assertion.

Even though parties may have had a contract, nothing in the economic loss rule shields a defendant from its own tortious conduct. *See Condo. Serv. Inc. v. First Owners' Ass'n of Forty Six Hundred Condo. Inc.*, 281 Va. 561, 574, 709 S.E.2d 163, 171 (2011)(regarding a conversion claim but equally applicable to a conspiracy claim); *see also PGI, INC. v. Rathe Productions,*

*Inc.*, 265 Va. 334, 576 S.E.2d 438, 443 (2003)). The Virginia Supreme explained this distinction in *Abi-Najm v. Concord Condo. LLC*, 280 Va. 350, 699 S.E.2d 483, 489 (2010) as follows:

> Notwithstanding the limitations on certain tort actions created by the economic loss doctrine, it is well-established that
>
>> a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages, including, where appropriate, punitive damages. *Foreign Mission Bd. v. Wade,* 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991).

(citing *Dunn Construction Co., Inc. v. Cloney,* 278 Va. 260, 266-67, 682 S.E.2d 943, 946 (2009). The plaintiffs in *Abi-Najm* were able to assert both a Virginia Consumer Protection Act claim and a fraud claim because the duty underlying each claim was from outside the contract. Similarly, Mr. Manley's conspiracy claim is based on underlying duties rooted in several different Virginia statutes and in the FDCPA; thus his conspiracy claim is not barred by the economic loss doctrine.

Mr. Manley has alleged that the Defendants' conspiracy has harmed him and explained how this harm continues to this day with his housing placed at risk. Even if the foreclosure is not set aside, if he proves the foreclosure was the product of a conspiracy, he could recover his damages that would include the loss of his housing.

  **B.** **Mr. Manley has properly alleged a breach of contract action against Fannie Mae.**

Defendants have attacked the breach of contract claim by asserting that the particular paragraph of the contract was not identified. Paragraph 15 of the Deed of Trust (attached to Defendants' Memorandum in Support of Motion to Dismiss) gives Fannie Mae, as the assignee of the original creditor, all the powers as lender. Thus, the Deed of Trust is now a contract between Mr. Manley and Fannie Mae.

Paragraph 24 of that Deed of Trust states that one of those powers is the power to appoint a substitute trustee. Thus, the contract identifies who has the power to appoint the substitute trustee. The Fifth Cause of Action in the SAC properly alleges a breach of this contract by Fannie Mae. Rather than following the contract, it worked with the other Defendants to have a different entity purport to make that appointment as if it was the creditor.

Although on different facts, the Virginia Supreme Court's *Squire v. VHDA* opinion shows that a claim for damages from an improper foreclosure can be stated. Furthermore, whether rescission is an appropriate remedy or only actual damages may be sought is a decision vested in the sound discretion of the trial court. On a Motion to Dismiss under Rule 12(b)(6), the Court need not decide which remedy is appropriate here because the only issue is whether a breach of contract claim can be stated.

    **C.**    **Mr. Manley has properly alleged a Quiet Title action based on the invalidity of the Deed claimed by Fannie Mae.**

Unlike the cases cited by Defendants where the homeowner was delinquent in payments, Mr. Manley could not be delinquent in making his monthly payments because under the HECM he owed no monthly payments. A HECM is a financial transaction that allows an elderly person like Mr. Manley to obtain credit secured by his residence and then remain in his residence as long as he is able. No monthly payments are due and instead the creditor is allowed to sell the home after Mr. Manley is no longer able to live in it. Therefore, the cases cited by Defendants, such as *Tamir v. Bank of NY Mellon*, *Jones v. Fulton Bank, N.A.*, and *Bagley v. Wells Fargo Bank, N.A.*, which were decided on facts where the borrower is months or years behind in monthly payments are inapplicable to his Quiet Title action. Mr. Manley could never be behind in monthly payments under a financial transaction where no monthly payments are ever provided for or due.

Page 10

The Quiet Title action properly challenges the validity of two title documents, the Appointment of Substitute Trustee and a subsequent Trustee's Deed. It seeks to have the title to the property restored to the position it was prior to the filing of these documents in the land records. To support those claims, the Quiet Title action asserts that the documents are invalid. Asking a Court to examine title documents to determine ownership interests and remove any cloud is a proper function of a Quiet Title action. *See Day v. Vaughn & Usilton*, 193 Va. 168, 171-72, 67 S.E.2d 898, 901-02 (1951) (stating that a cloud is "an outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently on its face has that effect, but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question). Here, the cloud is an invalid Trustee's Deed written by an entity that claims to have been the trustee but was not actually an appointed trustee under the Deed of Trust. This is unlike a Quiet Title challenge to foreclosure where the proper trustee who actually held the title has transferred the title, and the borrower merely asserts some error in the process leading up to the otherwise valid title transfer.

The underlying facts of Mr. Manley's claim are so different than *Squire v. VHDA* that the Virginia Supreme Court's rejection of the *Squire* Quiet Title claim is inapplicable. Mr. Manley's Quiet Title claim is based on the absence of any title ever held in trust by the alleged foreclosure trustee, and as such is alleging the simple premise that a deed signed by a person holding no property rights never conveys any rights. Because this claim is distinct from the Quiet Title claim in *Squire v. VHDA*, Mr. Manley does not have to allege that he is in compliance with his HECM obligation of keeping his home insured and the taxes current. Furthermore, he has alleged he can be in compliance with those duties but that Defendants are keeping him from doing so, and he also alleged that the original trustee would have taken a different course of

conduct. Thus, the foreclosure occurred because of the unlawful conduct, and if it is set aside Mr. Manley can perform his obligations. These allegations were not present in *Squire* and are another reason why *Squire* is inapplicable.

Therefore, the Quiet Title action requests reinstatement of Plaintiff's ownership interest, as encumbered by its original Deed of Trust with TitleWorks of VA as the trustee.

> **D.   Mr. Manley has properly requested Equitable Rescission based on the Defendants' unlawful conduct and the equities of the situation.**

The primary object of a court of equity is to do complete justice by settling the rights of all parties involved in the subject of the suit. *King v. Ashley*, 32 Va. (5 Leigh) 408, 411 (1834); *Chapman v. Delk*, 178 Va. 113, 121, 16 S.E. 2d 379, 382 (1941). Courts have jurisdiction in equity when a complete and adequate remedy cannot be had at law. *McClaugherty v. McClaugherty*, 180 Va. 51, 68, 21 S.E.2d 761, 768 (1942). Further, "[t]he controlling question is not, 'Has the party a remedy at law?' but, 'Is that remedy fully commensurate with the necessities and rights of the party, under all the circumstances of the particular case?'" *Id.* In exercising its equity jurisdiction, a court has broad discretion to fashion complete and just relief from the facts at hand. *Hooper v. Musolino,* 234 Va. 558, 572, 364 S.E.2d 207, 214-15 (1988). *See also Turner v. Citizens Bank*, 111 Va. 184, 68 S.E. 407 (1910) (noting that the court of equity has the power of devising its remedy and shaping it to fit the changing circumstances of every case and the complex relations of all the parties). The *Squire v. VHDA* opinion similarly recognizes that the decision to rescind a foreclosure is vested in the sound discretion of the trial court.

A court may overturn the consequences of a foreclosure where appropriate. *See, e.g.*, *Whitlow v. Mountain Trust Bank*, 215 Va. 149, 207 S.E.2d 837, 841 (1974); *Tabet v. Goodman*, 136 Va. 526, 118 S.E. 230, 232 (1923) (advertisement of the foreclosure sale did not conform to

the requirements of the deed of trust and the foreclosure was set aside); *Everette v. Woodward*, 162 Va. 419, 426-27, 174 S.E. 864 (1934) (allowing an equity suit to set aside foreclosure to proceed where complaint alleged trustee materially departed from the terms of the deed of trust and the creditor as the purchaser knew of the required terms). Indeed, the Virginia Supreme Court has explicitly recognized that a foreclosure may be set aside where authority to foreclose was not properly conferred on the trustee. *Wills v. Chesapeake Western Ry. Co.*, 178 Va. 314, 320, 16 S.E.2d 649, 652 (1941). There, the Court held that where the deed of trust authorizes the trustee to sell the property upon the request of the beneficiary, such request is a condition precedent of the trustee's right to sell, and in the absence of such request the sale may be set aside by a court's equitable powers. *Id*. If the statutory scheme for a forced sale is not strictly followed, the sale is not proper. *See Lester Group, Inc. v. Little*, 238 Va. 54, 57, 381 S.E.2d 3, 5 (1989) (regarding a tax sale when taxes were not actually delinquent but equally applicable to an invalid appointment of a substitute trustee).

Because of the use of trustees, the nonjudicial foreclosure process in Virginia must be specifically followed. Virginia is a nonjudicial foreclosure state that relies on a trustee to perform the foreclosure proceedings. *Fariasantos v. Rosenberg & Associates*, 2014 WL 928206, 2014 U.S. Dist. Lexis 30898 (ED Va. 2014). In foreclosure, the trustee uses the property right granted by a Deed of Trust to transfer title to the purchaser at the foreclosure sale. At that sale, the trustee can only transfer a deed interest that has been conveyed to the trustee. *See Powell v. Adams*, 179 Va. 170, 174-75, 18 S.E.2d 261 (1942). "Appointment of trustees must conform precisely to the requirements of the trust document." *Frazer v. Millington*, 252 Va. 195, 201, 475 S.E.2d 811, 815 (1996) (regarding a testamentary trust but also applicable to a Deed of Trust). When a substitute trustee is not validly appointed, a court properly strips the substitute trustee of

its powers. *See Little v. Ward*, 250 Va. 3, 10, 458 S.E.2d 586, 590 (1995) (regarding an irrevocable trust but equally applicable to a Deed of Trust).

For foreclosures, Virginia Code § 55-59(9) governs the appointment of substitute trustees, and provides:

> The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, **by executing and acknowledging an instrument** designating and appointing a substitute. When the instrument of appointment has been executed, the substitute trustee or trustees named therein shall be vested with all the powers, rights, authority and duties vested in the trustee or trustees in the original deed of trust. The instrument of appointment shall be recorded in the office of the clerk wherein the original deed of trust is recorded prior to or at the time of recordation of any instrument in which a power, right, authority or duty conferred by the original deed of trust is exercised.

Va. Code § 55-5(9) (emphasis added). Under this statute, only two possible entities are permitted to execute and acknowledge an instrument appointing a substitute trustee: the party secured by the deed of trust, or when more than one party hold interests in the obligations, the holders of more than fifty percent of the monetary obligations secured by the deed of trust. Had the General Assembly wished to include any other entities, like a servicer for example, among the group that could execute or acknowledge an appointment of substitute trustee in their own names, it certainly could have done so. *See* Va. Code § 55-66.3(B) ("The certificate of satisfaction shall be signed by the creditor or his duly authorized agent, attorney or attorney in fact"); Va. Code § 55-66.3:1 ("… [T]he financial institution, through its authorized agents, may execute all certificates, releases and affidavits required of a creditor by this chapter to effectuate a release.").

By Virginia statute, an acknowledgement for a document signed by a person acting for another must identify somewhere on it the entity on whose behalf it is signed. Va. Code § 55-

Page 14

118.5 sets forth "acknowledged before me" in a variety of contexts and the examples, in all of which the principal is identified somewhere. Va. Code § 55-118.6 provides a similar example.

When the writing already purports to be signed on behalf of or by authority of another, Virginia law does not require the text of an acknowledgement to repeat the statement that it is signed on behalf of or by authority of another. Va. Code § 55-120 ("When any writing purports to have been signed in behalf or by authority of any person or corporation, or in any representative capacity whatsoever, the certificate of the acknowledgment by the person so signing the writing shall be sufficient for the purposes of this and §§ 55-106, 55-113, 55-114, and 55-115, and for the admission of such writing to record as to the person or corporation on whose behalf it is signed, or as to the representative character of the person so signing the same, as the case may be, without expressing that such acknowledgment was in behalf or by authority of such other person or corporation or was in a representative capacity."). In other words, the acknowledgement need not repeat what the signature block or the document has already made plain.

If Mr. Manley's Breach of Contract or Quiet Title claims are not sufficient to set aside the improper foreclosure, then his claim for Equitable Rescission should be granted because the equities are in his favor. Defendants have not presented any analysis for how a fundamental misrepresentation that Live Well was the creditor can comply with Virginia's strict procedure for how to record an appointment of substitute trustee. Instead, they have refused to discuss the misrepresentation and have asked this Court to rule that it should never be discussed. At the Motion to Dismiss stage, Defendants must accept that this wrongdoing occurred. Congress created HECMs so that our elderly citizens could tap their equity while still remaining in their homes and aging in place. Thus, the purpose of the HECM program is to allow him to stay in his

home. Mr. Manley has attempted to do that and is now faced with homelessness following this wrongful conduct by Defendants. Given this wrongdoing and because Mr. Manley can meet all his obligations under his HECM agreement, a claim for equitable rescission of foreclosure has been stated.

### E. Under Virginia law, Mr. Manley has standing to bring claims that challenge an invalid appointment of substitute trustee.

As a party to the Deed of Trust that appointed TitleWorks of VA as trustee, Mr. Manley brings several different claims to challenge the action taken by a stranger to that document. Because both parties to a Deed of Trust are to be treated equally by the trustee, each of those parties has a contractual interest in the proper appointment of any substitute trustee. Defendants erroneously claim that Mr. Manley can never ask any court to determine whether an appointment of substitute trustee was properly made.

The central issue is that Fannie Mae must be identified as the creditor on the appointment of substitute trustee. Mr. Manley does not dispute that, in theory, Fannie Mae can use a disclosed and authorized agent to sign for it, as Ce-Link did for Live Well on Exhibit B. Consequently, instruments can be acknowledged even when stated being signed in a representative capacity. The purpose of the acknowledgement requirement is that the notary or person taking the acknowledgement shall know and certify that the person whose name is signed to the instrument is the person who is acknowledging it. *People's Building and Loan Ass'n of Hampton v. Roane*, 205 Va. 916, 917 (1965). Virginia courts have recognized that a deed may be executed by an attorney in fact or an agent in his own name if he refers to the power of attorney authorizing the action. *See Shanks v. Lancaster*, 6 Gratt. 110, 1848 WL 2788, at *1 (Va. 1848). Similarly, a deed executed by an attorney in fact may be sufficient if it is signed in the name of the principal or states that it is done for the principal. *Id.*

Courts will not infer documents affecting property are signed in a representative capacity where there is no such indication in the documents themselves. See 1A M.J. Acknowledgements § 20 ("The general rule is that a certificate of acknowledgment by an agent or attorney must show that it was made by such agent or attorney in behalf of the principal, but no particular set of words is necessary, in the absence of express statutory requirement, to show that he made the acknowledgment in his representative and not his private capacity. If that fact can be gathered from a consideration of the certificate, in connection with the deed, it is enough."). In *In re Brannan*, 2008 WL 1752206 (Bkrtcy E.D. Va. 2008), one Alan Brymer signed a Note and Deed of Trust as an individual, when he actually held the property in his capacity as a trustee. The court considered whether it could construe the note as the act of the trustee rather than Brymer individually, but rejected the idea, stating:

> As early as 1917, courts in Virginia have been willing to infer that an individual was acting in the capacity of trustee when he executed documents but did not include the word "trustee" on the signature line. *See Va. & W. Va. Coal Co. v. Charles*, 251 F. 83 ( D.W.Va. 1917), aff'd, 254 F 379 (4th Cir.1918). However, the courts will infer such a capacity only if the intent is clear from the situation. For example, in *Needham v. Legge*, 2006 WL 1134064 (Va.Cir.Ct. March 28, 2006), the intent was made clear from the granting clause of the deed itself, which set forth that the signatory was acting in his capacity as trustee. Thus, the court inferred that the signatory was signing as trustee.
>
> In this case, the facts surrounding the execution of the second deed of trust and the promissory note from Brymer to Great Northern do not lead to the inescapable conclusion that Brymer was acting in his capacity as trustee. In addition, Great Northern understood that Brymer was acting in his individual capacity. There is no language in any document that suggests otherwise.

*Id*. at *13 (emphasis added). Similarly, nothing about the substitute trustee document indicates in any way that Live Well was signing for Fannie Mae. Thus, no claim can be made that Exhibit B was signed or acknowledged by Fannie Mae, and Defendants must concede that, if the

allegation that Live Well had assigned away its rights is true, then the appointment of substitute trustee is not signed nor acknowledged by the beneficiary of the Deed of Trust.

Defendants improperly rely on *Wolf v. Fed Nat'l Mortg. Ass'n*, 830 F. Supp.2d 153, 161-62 (W.D. Va. 2011) by asserting this case held that only a party to an appointment can challenge the appointment. Actually, the legal analysis cited by Defendants regarded standing to challenge an assignment of a Deed of Trust, in that case from MERS to Bank of America. Mr. Manley is not challenging the assignment from Live Well to Fannie Mae and instead is relying on it. Defendants are the ones that seem to be arguing that such assignment away from Live Well was somehow ineffective and that Live Well retained rights as if no assignment had occurred.

Similarly, Defendants' reliance on *Bennett v. Bank of America* is misplaced because both *Bennett* and *Wolf* concerned the claim that both pages of an appointment of substitute trustee were not stapled together when a document was signed. Neither case analyzed whether the party signing the appointment document was authorized by Va. Code 55-59(9) because in both cases the actual owner of the note signed.

Additionally, Defendants cannot use *Horvath v. Bank of New York*, 641 F.3d 617, 623, n. 3 (4th Cir 2011) to terminate Mr. Manley's claims. The facts before the Court in *Horvath* were that the holder of the note appointed the substitute trustee, and the Court properly found that assignment of the loan to that holder transferred the right to appoint the substitute trustee. *Id.* at 624. *Horvath* thus makes clear that, on the facts alleged in the SAC, Fannie Mae rather than Live Well had the power to appoint the substitute trustee. In footnote 3, the Court merely pointed out that because Virginia is a non-judicial foreclosure state, the holder of the note does not have to prove its status prior to initiating foreclosure. Mr. Manley is not alleging that Live Well had to go to Court to prove anything before making the misrepresentation that it did, but is

instead attacking the affirmative misrepresentation of fact. Nothing in *Horvath* is a judicial stamp of approval to make misrepresentations.

Finally, Mr. Manley has alleged an injury as a result of the improper appointment. In the land records, his title has been taken from him. Declaring that transfer invalid would be a judicial decision partially redressing his injury. Also, awarding him damages would further redress his injury. Consequently, he has alleged the concrete injury traceable to the challenged conduct that would be redressed by a favorable opinion.

Therefore, Mr. Manley has standing to assert each of the state law claims in the SAC.

## CONCLUSION

For the reasons set forth above, Mr. Manley respectfully requests that Defendants' Motions to Dismiss be denied.

> Respectfully submitted,
> LARRY MANLEY
> By Counsel

_____/s/_____
Thomas D. Domonoske (VSB # 35434)
461 Lee Avenue
Harrisonburg, VA  22802
(540)  442-7706
Email: tomdomonoske@earthlink.net


Dale W. Pittman (VSB #15673)
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, VA 23803-3212
(804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of July, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Jason W. McElroy
>Tessa K. Somers
>WEINER BRODSKY KIDER PC
>1300 19th Street, NW, 5th floor
>Washington, DC 20036-1609
>*Counsel for Defendants Federal National*
>*Mortgage Association and Live Well Financial, Inc.*
>
>Dean L. Robinson
>ATLANTIC LAW GROUP, LLC
>1602 Village Market Blvd., SE, Suite 310
>Leesburg, VA 20175
>*Counsel for Atlantic Law Group, LLC*

>/s/
>Thomas D. Domonoske (VSB # 35434)
>461 Lee Avenue
>Harrisonburg, VA  22802
>(540)  442-7706
>Email: tomdomonoske@earthlink.net
>Counsel for Plaintiff